IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW YORK.

IN MAY TERM, 1837, IN THE SIXTY-FIRST YEAR OF THE INDEPENDENCE OF THE UNITED STATES.

---

## PRIEST and others *vs.* CUMMINGS.

The *alien widow* of a natural born citizen, who was an inhabitant of the state at the passage of the act of 1802 *enabling aliens to purchase and hold real estate,* is entitled to *dower* in lands whereof her husband was seised during coverture. *This is the true doctrine deducible from the case of Sutliff v. Forgey,* 1 Cowen, 89, *and* 5 Cowen, 713. *The propositions stated in the marginal note of that case, that the* WIDOW *of an* ALIEN PURCHASER *is dowable, and in the marginal note of the case of Mick v. Mick,* 10 Wendell, 379, *that the* ALIEN WIDOW *of a* NATURAL BORN CITIZEN *cannot be endowed, by reason of her alienism, are erroneous.*

The proceedings in reference to the naturalization of *aliens* are liberally construed, and every intendment is in their favor.

A *feme covert,* who is an *alien,* may be naturalized without the concurrence of her husband.

Her naturalization, however, does not entitle her to dower in lands of which her husband was seised during coverture, and which he aliened *previous* to her naturalization.

A *feme covert* is not barred of her right of dower, by joining with her husband in the conveyance of lands, and *acknowledging* her execution of the deed before an officer authorized to take such an acknowledgment, if she be a *minor,* within the age of *twenty-one,* at the time of the acknowledgment.

Whether a *mandamus* will lie, in any case, to vacate an amendment within the power of an inferior court, *quere.*

VOL. XVI.                                   78

NEW-YORK,
May, 1837.

Priest
v.
Cummings.

So also, whether the supervisory power of this court extends to the marine court of the city of New-York, in cases of *naturalization*, under the acts of the Congress of the U. S. *quere*.

ERROR from the superior court of the city of New-York. Catharine Cummings brought her action against Luke Kip, to recover, as the widow of James Cummings, her *dower* in certain lots in the city of New-York. In 1796, the lots in question were conveyed to her husband; on the 29th of January, 1802, the plaintiff was married to James Cummings, a natural born citizen, with whom she lived in the city of New-York until his death in 1832; at the commencement of this suit, the defendant was in possession of the premises in question under title derived from the husband of the plaintiff, by virtue of the foreclosure of a mortgage executed by him to one *James Foster*, bearing date the 4th June, 1802. The mortgage was foreclosed in chancery, the decree ordering a sale of the mortgaged premises was made on the 10th April, 1804, the premises were sold at public auction, and bid in by William H. Robinson, to whom the same were conveyed by a master's deed on the 1st June, 1804. The plaintiff was not a *party* to the suit in chancery. On the part of the defendant, it was shown that the plaintiff joined with her husband in executing the mortgage to Foster, and, on the day of its date, *acknowledged* her execution thereof before a master in chancery, who endorsed upon the mortgage a certificate of such acknowledgment; and also that she was *born* a subject of the king of Great Britain. To rebut this proof, it was shown that, at the date of the mortgage to Foster, the plaintiff was a *minor* within the age of twenty-one years, to wit, of the age of about nineteen years and six months, and a certificate of a court of record was produced that, on the 16th October, 1829, the plaintiff became a citizen of the United States in conformity to the acts of congress, prescribing the mode of *naturalization of aliens*. To invalidate the certificate thus produced, the counsel for the defendant read in evidence the *record of naturalization* and the affidavit upon which it was founded, and insisted that the whole proceeding was irregular and void. The *record*, as origi-

nally made up, stated that it had been made to appear to the court, that the plaintiff had "resided within the limits and "under the jurisdiction of the United States for at least five "years, immediately preceding the time of making his depo- "sition, to wit, in the city of *New York*, one year at least," omitting by mistake to insert after the word *New-York* the words *and within the state of New-York*, which were contained in the affidavit produced in court at the time of the naturalization, and which were subsequently permitted to be inserted by the court before which the naturalization was had, upon an application to amend the record. The *affidavit* proving the residence and character of the plaintiff was made by *James Cummings*, of the city of New-York, merchant, and George Cummings, of the said city, physician. The jury, under the charge of the court, found a verdict for the plaintiff, upon which judgment was rendered. The defendant having excepted to various decisions, sued out a writ of error. After the assignment of errors and joinder, Luke Kip, the plaintiff in error, died, and an order was made by this court, that the cause proceed at the suit of the present plaintiffs, heirs at law of Luke Kip, the party who sued out the writ of error.

*D. Selden* and *S. Stevens*, for the plaintiffs in error.

*S. Sherwood*, for the defendant in error.

*By the Court*, NELSON, J. The plaintiff below married James Cummings, who was a resident of the city of New-York, on the 29th day of January, 1802, and both continued to reside there until his death in 1832. The plaintiff was an alien until the 16th October, 1829, when she was naturalized. The husband was a natural born citizen. The evidence in the bill of exceptions sufficiently establishes the fact, and the presumption of law would supply any defect if necessary, (the domicil of the wife following that of the husband,) that the plaintiff was an *inhabitant* of this state before the act of the 26th March, 1802, enabling *aliens* to purchase and hold real estate under certain re-

strictions, and is, therefore, entitled to all the privileges conferred by its provisions. That act gave her a capacity to purchase and hold real estate ; not to take by descent or other operation of law. It was subsequently extended in 1804, 1805 and 1808. The latter act enlarged the capacity of the alien by providing that " all persons authorized to acquire real estate by purchase by this act, or the act hereby extended, may also take and acquire by *devise* or *descent.*" See Statutes collected, 3 R. S. 341 to 345.

It was insisted upon the argument by the counsel for the plaintiff below, that the principle adjudged in the case of *Sutliff* v. *Forgey*, 1 Cowen, 89, affirmed in error, 5 id. 715, was conclusive in her favor ; and, after the most attentive consideration, I cannot but think it is so. There the husband had been naturalized on the 29th August, 1803, and made the purchase on the 4th January, 1804, the wife, the demandant, at the time being an *alien*, and continuing so until the commencement of the suit. The naturalization of the husband placed him upon the footing, in respect to acquiring and holding real estate, of a natural born citizen. 1 Black. Comm. 374. Bac. Abr. tit. Aliens, 129. 1 Inst. 89. 1 Cowen, 95. The position was there taken by the counsel for the demandant, that the naturalization of the husband operated to naturalize the wife ; but this was denied by the court. And as judgment was given for her notwithstanding, it would seem to follow as a principle necessarily deducible from the case, that an alien widow of a natural born citizen would be entitled to her dower under like circumstances, because if entitled to dower in an estate purchased by the husband after naturalization, as he stands precisely upon the footing of a natural born citizen, the dower of the alien widow of the latter cannot consistently be denied. After naturalization, the enabling statutes were no way material or connected with the purchase, which was made by virtue of the authority derived from citizenship, as in the case of a natural born citizen.

This view is confirmed by the opinions of the judges in *Sutliff* v. *Forgey*. The *Chief Justice*, after reciting the act of 1802, and the *purchase* made by the husband in

1804, put his decision upon the ground, that it " enured to the benefit of the demandant within the equity and spirit of the act." He said " she then had capacity to take an estate : that capacity has never ceased to exist. Her right to dower attached when her husband made the purchase, and she has done no act to divest herself of it." Mr. Justice Woodworth remarked, that it was " manifest, that the naturalization of the husband does not remove the disability of the alien wife to be endowed. Her right, he said, cannot be greater than it would have been, had the husband been a natural born citizen. When the premises in question were purchased in 1804, the demandant, although an alien, had the capacity to take by the enabling statutes." And he concluded " the deed to the husband necessarily enured to the benefit of the wife, so far as to secure to her such right in the premises as she would have taken had she not been an alien." Now, the *purchase* to which this effect was given by construction, was made not by an alien, but by a naturalized citizen ; and the enabling statutes being unimportant in respect to the capacity of the husband to make it, operated only by means of the capacity they had conferred upon the wife. The purchase was made independently of them ; but it enured to her benefit by means of the act of 1802, so that her right of dower attached. The marginal note of the reporter to this case, as reported in the court of errors, 5 Cowen, 713, is obviously erroneous. Sanford, chancellor, and Colden, senator, it is said, delivered opinions in which they concurred with the court below, that the demandant took her dower as *purchaser* within the meaning and construction of the act of 1802. The doctrine of the case, as given in the note, is thus : "*The widow of an alien purchaser under the statute,* 2 R. L. 542, *takes her dower as purchaser within the meaning of the act according to Sutliff* v. *Forgey,* 1 Cowen, 89, 97." Now, no such principle was involved or decided in the case, as is manifest from the opinions referred to ; nor did the facts call for, or warrant the expression of any such opinion. The purchase was not made under any of the enabling acts ; nor was the demand-

ant the widow of an *alien* purchaser. She was the alien, and her husband a naturalized citizen.

The decision in the court of errors was simply an affirmance of the doctrine of the supreme court, and which was this : *an alien widow of a naturalized husband is entitled to her dower out of lands of which he was seized, if she bring herself within the statutes of 1802 or 1808, enabling her to purchase and hold real estate at any time during the seizin of the husband : her right of dower in such case, attaches by reason of her capacity thus to purchase and hold.* It is impossible to extract any different doctrine out of the case as decided either in the supreme court or in the court for the correction of errors, regarding the facts and opinions there given. The erroneous marginal note seems to have misled the revisers of the statutes, Chancellor Kent in his commentaries, and the late Chief Justice Savage, while deciding the case of *Mick* v. *Mick*, 10 Wendell, 381. It is now engrafted into the statutes, 1 R. S. 740, § 2, supposed by the revisers to have been adjudged in the above case, and taken from it. See notes of revisers to the section. Chancellor Kent observes, 4 Comm. 36, 7, that in New York, while the general rule is admitted that the alien widow even of a natural born citizen is not entitled to dower in her husband's lands, yet, under the statute of 1802, *the widows of aliens entitled by law to hold real estate are held to be dowable*, referring to *Sutliff* v. *Forgey*. The late chief justice in *Mick* v. *Mick*, remarks that " in *Sutliff* v. *Forgey*, 1 Cowen, 80, it was held that the *widow of an alien* who purchased under this statute, (1802,) was entitled to dower." It may be proper to observe, that the case of *Mick* v. *Mick*, was correctly decided according to the true exposition of the doctrine of *Sutliff* v. *Forgey*, notwithstanding the misapprehension of the learned chief justice, because, when the widow, who was an alien, became a resident of the state, no statute existed enabling her to purchase and hold land ; and she had not complied with the terms of the act of 1825, Session Laws, 427, 1 R. S. 720, after the passage of it, during coverture, or before the death of the husband. See reference to these statutes, 10 Wendell, 381.

From the above view it seems clear, that the question as to the true construction of these enabling statutes, and the effect of them upon the claim of dower of an alien widow entitled to purchase and hold lands by virtue of them, is not an open one in this court, or in the court for the correction of errors. Their operation has been already fully considered and determined by both ; and though we might feel some difficulty in giving our assent to the view there taken, if the statutes were now, for the first time, to receive an interpretation, we must consider ourselves bound by the decision in *Sutliff* v. *Forgey*. The only difference between that case and the present is, that *there* the husband was a naturalized citizen, and held by virtue of that character; *here*, he was a natural born citizen: the wives were aliens, at the time of the marriage, and continued so during the seizin of their husbands; but both came within the act of 1802, enabling them to purchase and hold real estate.

The court put the right to dower upon the capacity conferred by the act upon the alien widow; that by reason of it, this right attached to the lands of the husband, the same as if she had been a citizen. The idea that the naturalization of the husband operated to naturalize the wife, was repudiated; her rights were considered no greater in this respect, than those of the alien wife of a natural born citizen, who could not take dower at common law. They stood upon a footing with each other. It was therefore only upon the construction of the statutes above *explained*, that the widow could possibly have been considered entitled to dower; for if there had been nothing else in the case but the naturalization of the husband, as that only put him on a footing with a natural born citizen; and as the *alien widow* of a natural born citizen could not claim dower, the demandant must have failed upon the law as recognized and laid down by the court. The truth is, according to the principle of *Sutliff* v. *Forgey*, it is a matter of no moment, whether the husband is a natural born, or naturalized citizen; it is enough if he is capable of purchasing and holding, or in other words, of *being seized* of the title to real estate. This capacity is of course essential to support a claim

NEW-YORK,
May, 1837.

Priest
v.
Cummings.

to dower in any case, and may be derived from either of the above characters, or from enabling statutes. In respect to the widow, if she be an alien, she cannot claim dower at common law, because all aliens are disabled from acquiring a freehold ; but if she possesses the capacity to take and hold lands under the statutes, then she may according to the doctrine of the above case ; because then, in the language of the courts, *the seizin of the husband enures to the benefit of the wife, so that the right of dower attaches.* Upon this view, it may be said, within the authority of *Sutliff* v. *Forgey*, that an alien widow of an alien husband may claim dower, *if both come within the enabling statutes.* This proposition, which seems clearly involved in the decision, comes nearer to the marginal note of the reporter, 5 Cowen, 715 ; but it is still a very different principle.

II. The counsel for the plaintiff below also contended, that if the plaintiff was not entitled to her dower under the *enabling statutes,* she was so entitled by virtue of her naturalization of the 16th October, 1829, upon the ground of its retro-active operation ; before discussing which proposition, it is proper to notice some preliminary objections taken to the record of naturalization. It is said to be void, because not made up in conformity to the act of congress, and two defects are specified : 1. That it does not appear that proof was exhibited before the court of *the one year's residence within the state* where the court was holden, according to the act of 1802, § 1 ; and 2. That one of the witnesses testifying to the *residence* and *character* of the alien, was her husband. The record, as to the residence before the amendment was made, read as follows : " that the alien has resided within the limits and under the jurisdiction of the said United States for at least five years, immediately preceding the time of making this deposition, to wit, in the city of New-York one year at least." The amendment added between the words " *New-York*" and " *one,*" as follows : " *and within the state of New-York;*" which words were contained in the original affidavit, the omission being a clerical error in making up the record. The act requires, that " the court admitting such alien shall be satisfied that

he has resided within *the United States five years at least,* and *within the state or territory where such court is at the time held, one year at least."* Now, as I understand the record, the amendment has not substantially altered its legal construction or effect; for the court cannot but know from inspection of it, that the *city of New-York* is within the *state of New-York,* and, therefore, that the one year's residence was within the state; as much so as that the state of New-York was one of the United States, and, therefore, that the one year's residence was also within them. Both facts depend upon the intelligence of the reader, whom the law presumes possesses a reasonable knowledge of the geography of the country. Courts at least may take some notice of it; and if so, they can receive no additional information upon an inspection of the record from the amendment. Being a mere clerical error, upon the plainest principles, it was amendable by the affidavit, which was correct; and not altering the legal operation of the record, there is no reason for excepting the supposed rights of third persons. The supreme court of the United States are extremely indulgent in their interpretation of these proceedings, and make the most liberal intendments in their favor. In *Campbell* v. *Gordon and wife,* 6 Cranch, 176, it was decided, that the naturalization of Currie was valid, though the certificate or record produced, contained no adjudication of his admission to citizenship by the court, nor allegation, that he had behaved as a man of good moral character. This was under the act of 1795, but its provisions, in this respect, did not differ from those of 1802. Mr. Justice Washington observed, that, if the *oath* be administered, and nothing appears to the contrary, it must be presumed that the court, before whom the oath was taken, was satisfied as to the character of the applicant; that the oath, when taken, conferred upon him the rights of a citizen, and amounts to a judgment of the court for his admission to those rights. Again; in *Stark* v. *The Chesapeake Ins. Co.,* 7 Cranch, 420, it is reported to have been decided, that it need not appear by the record of naturalization

NEW-YORK,
May, 1837.

Priest
v.
Cummings.

that all the requisites prescribed by law for the admission of aliens to the rights of citizenship have been complied with; and that the judgment admitting the alien to become a citizen is conclusive that all the pre-requisites have been complied with; or that parol proof may be received in aid of the record. In *Spratt* v. *Small*, 4 Peters, 393, several exceptions were taken to the record; but, though it was subject to the objection here made, it was not noticed by the counsel or the court, and was conceded to be in the usual form. It stated that S. had resided " within the limits and under the jurisdiction of the United States for five years at least last past, and within the county of Washington one year at least," leaving it to inference that the county lay within the state of Maryland. As to the second objection, the act requires that the court shall be satisfied that the applicant sustains a good moral character, &c., in addition to his residence; but it does not prescribe the kind of testimony to be received, except that his own oath shall not be taken to prove his residence. Beyond this, the species and amount of proof rest entirely in the discretion of the court. Besides, I have not been able to discover from the record in the case, that James Cummings, the witness, was the husband of the plaintiff, upon which fact the objection rests. The 2d section of the act of 1816, under which the plaintiff made her application, (as is to be inferred from the proceedings,) expressly requires, that the proof of residence in the United States before the 14th April, 1802, and continuance since, and the place or places of the five years' residence immediately preceding the application, together with the names of the witnesses, shall be set forth in the record—otherwise the person is not to be deemed a citizen. There is some doubt whether the record is sufficiently explicit as to the place of this five years' residence—in other respects, it appears to be perfect.

III. It is also objected, that a feme covert cannot be naturalized without the concurrence of her husband. It was said by Mr. Justice Story, in *Shark* v. *Dupont*, 3 Peters, 248, the incapacities of femes covert provided by the common law, apply to their civil rights, and are for their pro-

tection and interest; but they do not reach their political rights, nor prevent their acquiring or losing a national character. These political rights do not stand upon the doctrine of municipal law, applicable to ordinary transactions, but upon the more general principles of the law of nations. See 2 Johnson's Cases, 29. 3 id. 109. It will not be denied, that congress possess the power to naturalize femes covert, even against the consent of their husbands; and the language used by that body could not well be made more comprehensive—" *any alien,* being a free white person, may be admitted to become a citizen of the United States," &c. I can perceive no reason for applying the restricted construction of this clause contended for, unless it be to enable the husband to deprive his widow of her dower. The practice, I believe, has been universal to admit femes covert to citizenship upon application.

IV. But, assuming the naturalization, in October, 1829, to have been valid, it is contended that it cannot operate retrospectively, so as to attach the right of dower to premises which were previously aliened by the husband, in 1802. The act of congress affords no great light to aid us in determining this point of the case; it merely declares, that upon complying with its provisions, the applicant shall " *become a citizen of the United States,*" leaving the effect or measure of capacity thus conferred to the judgment of the law. Lord Coke says, that an alien naturalized by act of parliament is " to all intents and purposes a natural born subject." 1 Co. Litt. 129, *a.* It is also said, that naturalization is an adoption of one to be entitled to what by birth an Englishman may claim, and takes effect from the birth of the party, but denization from the date of the patent. Viner's Abr. tit. Alien, letter D. Naturalization in Ireland, has no effect in England, because it is a fiction of law, and can affect only those consenting to the fiction. When the law-makers have power, it has the same effect as a man's birth there. Id. pl. 7. 1 Bac. Abr. tit. Aliens, 130. The position, in 1 Black. Comm. 374, is, that naturalization cannot be performed, but by act of parliament; for by this, an alien is put in exactly the same state as if he had been

born in the king's legiance. From these and other authori-ties that might be referred to, it sufficiently appears, that the uninheritable blood of the alien becomes purified, and made inheritable by naturalization; and in some respects, reaches back to his birth. All previous disabilities, as to taking or transmitting real estate, are at once removed, and any defective or forfeitable title, by reason of alienism, becomes perfect and indefeasible. 1 Johns. Cas. 398. 7 Wendell, 335. Hence children, born before naturalization, will inherit the same as those born after, though it is otherwise in case of denization, the effect of which is simply prospective. Lands purchased before may be held and transmitted the same as those acquired afterwards. But the difficulty in sustaining the claim of the plaintiff upon the retro-active operation of her naturalization, and consequent investment of a capacity to take her dower, *during the whole period of her coverture,* is, that, *at the time* the husband executed the mortgage, (4th June, 1802,) and thereby parted with his title, as in effect he did, as there has since been a foreclosure under it, she was a *disabled person in law* by reason of alienism, and had no capacity, independent of the enabling statutes, to take even an inchoate right of dower. It may be said there was no defective or forfeitable right or title existing, to be forfeited, because there was no right at all vested in her that could attach at the time of the alienation; and, therefore, it must attach, if at all, for the first time, while the estate is in the hands of innocent third persons. The law which *nihil facit frustra* will give no estate which it does not enable the donee to keep; and, therefore, an alien can take nothing either by descent, courtesy or dower. If he purchase, he may be said to acquire an estate till office found; but he takes nothing *by act of law.* 7 Cowen, 50. 5 id. 52. 1 Vent. 417. Park on Dower, 228. The only case that has been referred to, or that I have been able to find after a pretty full examination, where the widow is even said to be entitled to dower out of an estate aliened by the husband, during the *existence of a natural disability* to take dower, and consequently before any right attached to the land, is *the case of a subsequent naturali-*

*zation of the wife by act of parliament.* This exception to the general rule, if it exist at all, will be found, I apprehend, to depend upon the peculiar language of the act, together with the omnipotent power admitted by the courts to belong to the statutes of that body. Aliens, in England, are naturalized by private acts of parliament, which are not published among the general laws. I have not been able to find one of those acts, so as to be able to examine the phraseology. It is said by Lord Coke, that, if a man take an alien to wife, and afterwards alien his lands, and after she is made a denizen the husband die, she shall not be endowed, because her capacity and possibility to be endowed come by denization. " *Otherwise*," he says, " *it is, if she were naturalized by act of parliament.*" Co. Litt. 33, *a.* Viner and Cruise lay down the same position. The latter author remarks, that, if an alien be naturalized by act of parliament, she then becomes entitled to dower out of all the lands whereof her husband was seised during coverture. See also 1 Roll. Abr. 675. Park on Dower, 229. Where the incipient right of dower once attaches, and the alienation takes place during its suspension or the existence of a temporary disability, which is subsequently removed before the death of the husband, there the right revives and exists in full force, in contemplation of law from its commencement. Several examples are stated and sanctioned by the court, in Menvil's case, 13 Co. 23 ; such as an alienation before the wife is of an age to be dowable, or during her elopement, or during the existence of an attaint of felony. In all these instances, it is said there is not any incapacity or disability in the person, but only a temporary bar until the proper age, reconcilement, or pardon ; that the wives were not incapable by birth, but lawfully entitled to dower by the marriage and seisin ; and that, therefore, when the impediment is removed, they shall be endowed. Hargrave's n. 202. Viner, tit. Dower, q. pl. 2. 2 Bac. Abr. tit. Dower, 359. 1 Cruise, 173. But this rule, it is said, is not applicable to the case of an alien wife, who has become a *denizen* by letters patent, because, at the time of the alienation of the husband, she was *absolutely disabled*

NEW-YORK,
May, 1837.

Priest
v.
Cummings.

*by law from her birth*, and the capacity and ability to take dower began with her denization. This distinction adds some weight to the remark before made in respect to the position of Lord Coke, as to the effect of naturalization, namely, that it depends upon no general principle, but exists as an exception, by reason of the particular wording, and force of the act of parliament. The case of *Fish* v. *Klein*, 2 Merrivale, 431, may be referred to as an authority for the remark. There K., an alien, had sold and conveyed certain premises, and an act of naturalization was procured to perfect the title in the grantee. The language of the act was, " *that the said F. K. shall be, and is thereby from thenceforth naturalized,*" &c. It was contended that it could not establish retrospectively an invalid title. The master of the rolls concurred in this view, and held that it did not operate to confirm the title in the grantee ; in other words, that it did not invest K. retrospectively with a capacity to hold and convey real estate. It is stated in a note to the case, that the vendors were desirous of having retrospective words introduced into the act, but that they found it was impracticable to depart from the common form. The case at least shows, what might well be supposed without it, that the effect of an act of naturalization depends upon the language of it ; and that an express clause for the purpose is essential to its retro-active operation, in order to vest a disabled person with an antecedent interest in real estate. The plaintiff, I think, cannot successfully claim her dower upon this branch of the case.

V. It was further contended on the argument, that the acknowledgment of the mortgage by Mrs. Cummings, operated under the statute as a valid execution of the instrument, and a release of all her right to dower, notwithstanding her infancy. This idea is derived from, and attempted to be sustained by, the terms of the grants from Charles II. to the Duke of York, 1664 and 1674, by which the lands in this colony were to be held of the king, *as of the manor of East Greenwich in the county of Kent, in free and common socage, and not in capite by knight service.* By an ancient custom derived from the Saxon times, most of the lands in

East Greenwich were held in gavel kind, as William the Conqueror, either through clemency or policy, confirmed many of the rights and immemorial customs of the inhabitants. The lands thus held, descended equally to all the children, the male line being preferred ; and in consequence of the constant partibility of the estates into small shares, liberty was given to an infant at the age of *fifteen*, to sell his or her share, as is said, for the convenience and necessity of commerce. A short answer to this proposition may be given, namely, that the lands in New-York were never held in gavel kind, nor could that have been the tenure in which they were held in East Greenwich, or even if it had been, the custom would not apply in this case, as it was confined to absolute sales, and a transfer by feoffment and livery of seisin, and to lands that had come to the infant by descent, and not by purchase. 3 Bacon, tit. Gavel kind, 362, 581. Viner tit. Gavel kind, let. C. pl. 1, 2. 2 Black. Comm. 85. 2 N. R. 506.

VI. We have been referred to a number of authorities to show that the acknowledgment under the statute by femes covert, by means of which they are enabled to transfer their interest in lands, coming in the place of a transfer by fine and recovery, operates in bar of their right of dower, even in case of infancy. It is true, that the record and judgment of the court in these cases, is conclusive upon the cognizor and vouchee, whether an *infant*, *idiot* or *feme covert* until reversed on error ; and in the case of an *infant*, the reversal must take place before he or she attain full age, because they must be inspected by the judges in open court. 5 Cruise, tit. 35, Fine, c. 5, § 26, 27, 28, tit. 36, Recovery, c. 8, § 6. Preston on Convey. 252. 12 Co. Litt. 122. But the acknowledgment under our statute, is not considered in the nature of a judgment, and has no such conclusive effect upon the rights of the persons making it. 4 Johns. R. 161. 12 id. 469.

Judgment affirmed.*

---

* At the same term, when the preceding case on writ of error was argued, another question between the same parties arose, viz. whether this court

would award a mandamus, directing the marine court of the city of New-
York to vacate the rule allowing the amendment of the record of naturaliza-
tion referred to in the preceding statement of the case, and in the opinion of
the chief justice.   After advisement, the following opinion was delivered;

By the Court, BRONSON, J.   The decision in the case of Priest and others v.
Cummings, for dower, renders it unnecessary to discuss this case.   It is enough
that the amendment ordered by the marine court, was not material, and did
not in any way affect the rights of the relator.   It would therefore be useless
to consider whether a mandamus would lie in any case to vacate an amend-
ment within the power of the inferior court ; or whether the supervisory power
of this court extends to the marine court in cases of naturalization, under the
acts of congress.

The relator has not been prejudiced by the amendment, and can therefore
have no better right to prosecute a mandamus that any other citizen.

Judgment for the defendants on the demurrer to the return to the alterna-
tive writ.

