## McCarty v. Hodges.

In the naturalization of an alien, a previous declaration of intention is an absolute prerequisite, without which the naturalization is absolutely void.

The record of naturalization, though it adjudicates that such declaration has been made, is not conclusive, but it may be disproved by parol.

It is a question of jurisdiction upon which the court of final naturalization cannot so adjudicate as to preclude inquiry.

In questions of pedigree, four kinds of evidence may be received: personal knowledge, hearsay among relatives, family conduct and general reputation.

Hearsay, to be admissible, must be from those connected with the parties, so situated as to be likely to know, and are dead.

Family conduct from those who, by recognizing the relationship, evince a belief and opinion on the subject.

General reputation is admissible when of so ancient a date and so wide spread as to preclude the idea of fabrication.

This was an action of ejectment, brought to test the title to certain valuable real estate in Broadway, Franklin and Leonard streets, on a part of which stands the Carleton House.

Dennis McCarty, a naturalized citizen of the United States, died in the city of New York in 1835, seized of the real estate in dispute in this suit. He left no children, but several sisters, who, by reason of their alienage, were incapable of inheriting, and several nephews, who, though citizens, labored under the same disability by reason of the alienage of their parent, who was living and through whom alone they could inherit. The land was therefore deemed to be escheated to the State for want of heirs who could take. Upon the application of some of his near relatives, the Legislature released the claim of the State and directed the property to be sold and the proceeds

55—vol. 2.

distributed among certain of the relatives. This was done, and under that sale these defendants claimed that property.

The plaintiff in this suit, however, claimed that the land did not escheat, but descended to him as heir of the decedent; and to make out his claim, he proved himself to be related to the decedent in the eighth degree of consanguinity, and that, though born in Ireland, he was naturalized before the death of Dennis McCarty, to wit: on the 26th of August, 1834; and that, although more distantly related to the late owner than several relatives who were not citizens, yet, as he was the only heir who was capable of inheriting, his title to the property under our laws was superior not only to that of those nearer relatives, but also to that of the purchasers under the sale.

To support his claim, he gave in evidence the proceedings of the Court of Common Pleas of the county of Saratoga, where he resided, from which it appeared that on the 2d of September, 1831, he presented to the court a petition setting forth that, being desirous of becoming naturalized, in compliance with the laws of the United States, he did thereby *report* his name, birth-place, age, place whence he emigrated, government to which he owed allegience, and his residence in this country, to which he made oath in open court.

In August, 1834, he again appeared in the same court with his witnesses, and took the oath of allegiance, whereupon that court gave its judgment that, "it having appeared to this court that D. M'C. has, in due form of law, more than two years since, declared his intention to become a citizen of the United States; and this court being satisfied that the said D. M'C. has resided within the limits of the United States five years at least, and within the State of New York at least one year; and that during that time he has behaved as a man of a good moral character, attached to the Constitution of the United States, and well disposed to the good order and happiness of the same, and having now here in court declared on oath as follows: (the oath of abjuration and allegiance.) It is therefore ordered by this court, that the said D. M'C. be admitted a citizen," etc.

McCarty v. Hodges.

Upon this state of the record it was contended by the defendant that the naturalization was void, because the plaintiff had not taken the preliminary step of declaring his intentions; while on the other it was insisted, that the adjudication of that court in August, 1834, that M'C. had "in due form of law declared his intentions," was conclusive, and that the want of such declaration could not now be inquired into.

At the close of plaintiff's testimony, a motion was made for a nonsuit, on the ground that the plaintiff had not been naturalized.

*Gerard, Emmet and Foster*, for plaintiff.

*J. R. Whiting and O'Conor*, for defendants.

*The Circuit Judge* gave the following opinion on this point:

The act of congress is very explicit and peremptory. It declares that any alien may be admitted to become a citizen *on the following conditions, and not otherwise :*

1st. That he shall have declared on oath his intention to become a citizen, and to renounce all other allegiance; and,

2d. That at the time of his admission he shall take the oath of abjuration and allegiance, and satisfy the court as to certain matters not material to this case.

Both of these conditions must be complied with. No court has power to dispense with either of them, and the omission of either of them would be a fraud upon the statute, which would necessarily render void any judgment or certificate of naturalization which any court might give. Such is the plain intention of the act of congress, and such is the construction which the Supreme Court of the United States have given to the statute.

I find no adjudication on this point in the courts of our State, but in one of our sister States, South Carolina, the same principle has been adopted. (1 McCord's Chan. R. 370, *Vaux v. Nesbit.*)

If there was no evidence before me, but the record of the proceedings of August, 1834, I should be bound to presume that the preliminary proceedings required by the statute had all been had. (*Campbell* v. *Gordon*, 6 Cranch, 176; *Stark* v. *Chesapeake Insurance Co.*, 7 id. 420; *McDaniel* v. *Richards*, 1 McCord, 187.) The courts are indulgent towards their proceedings, and make the most liberal intendments in their favor. (*Priest* v. *Cummings*, 16 Wend. 625.)

But the record before me does not stop here. It gives the preliminary proceedings had in that court, which do not of themselves show a compliance with the act of congress, for they show that the plaintiff in September, 1831, did not declare his intentions, as peremptorily required by the statute, and, instead of it, merely made a report of himself in compliance with the second section of the act of 1802. That section having been repealed prior to 1831, such report became entirely nugatory and cannot aid the plaintiff, because it cannot in any manner be regarded as a compliance with that condition which required him to declare his intentions. If, then, the plaintiff never took any other proceedings, preliminary to his final naturalization, except the report of 1831, he has omitted one of the indispensable conditions which the act of congress requires, and I should be compelled to regard that omission as fatal to the validity of his naturalization. Any other view would enable a foreigner to obtain the rights and privileges of an American citizen in fraud, and in violation of the very law which confers them upon him.

But the difficulty in the case is, that the question whether the report of 1831 was the only proceeding preliminary to the final naturalization, is not so well established in point of fact, as to reduce the matter to a mere question of law for the court alone to pass upon.

On one side is the strong presumption arising from the whole record that the report of 1831 was the only preliminary proceeding. And on the other is the express adjudication of the Court of Common Pleas in their judgment of naturalization, that the plaintiff had " in due form of law, more than

McCarty v. Hodges.

two years since, declared his intention to become a citizen of the United States."

This is presumptive evidence that the plaintiff had so declared his intentions, for he was at liberty to have declared them in any other court of competent jurisdiction, the statute not confining the preliminary proceedings to the same court where the final proceedings may be had.

It is, therefore, if the record is not conclusive, a question of fact to be submitted to the jury whether the plaintiff ever did, in fact, declare his intentions, pursuant to the act of congress.

But I have my doubts whether the final record of naturalization is not conclusive upon me. I feel the force of the argument that if it is so, foreigners may be admitted as citizens in fraud of the law, but that can be remedied by the court, in which the proceeding was had, correcting its own record. But the cases are very strong that in this court that record must be regarded as conclusive. In *Campbell* v. *Gordon* (6 Cranch), it was decided that the naturalization was valid, though the record contained no adjudication of his admission, nor that he had behaved as a man of good moral character. Justice WASHINGTON says, "it must be presumed that the court before whom the oath was taken was satisfied; that the oath when taken amounts to a judgment of the court." In *Stark* v. *Chesapeake Insurance Co.* (7 id.), it is reported to have been decided that the judgment admitting the citizen is conclusive that all the prerequisites have been complied with.

These two cases have been so regarded in our court: *Priest* v. *Cummings* (16 Wend. 625): and in *Spratt* v. *Spratt* (4 Peters, 408), Chief Justice MARSHALL says: "The various acts of naturalization submit the decision on the rights of aliens to admission to courts of record. They are to receive testimony, to compare it with the law, and to judge in both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry, and like every other judgment, to be complete evidence of its own validity."

In either aspect of the case, then, this motion for a nonsuit

must be denied. At the same time, it must be understood that I am not entirely clear that the record is to be regarded as conclusive as to the declaration of intentions. There are some cases, in some of the State courts, which look the other way, and I am not yet advised whether I shall submit the case to the jury, with instructions to them to regard the record as conclusive, or with instructions to inquire whether the first step ever was, in fact, taken by the plaintiffs.

The relationship of the plaintiff to the decedent was shown by the annexed genealogical tree, from which it appeared that he was connected within the eighth degree of consanguinity (or second — third cousin), and that he claimed to the exclusion of nearer relatives in this country, viz., a niece of the decedent and her children.

*The Judge* charged the jury as follows:

Dennis McCarty of New York, having died without children him surviving, his real estate, comprising these premises, escheated to the State, unless he had heirs who could take, and the defendants claim title under that escheat.

His nearest relatives, who otherwise might have inherited, were aliens and could not take.

His nearest relative in this country was Mrs. Bant, a sister's child; but she could not take, because she was an alien.

His next nearest relatives in this country, were the children of Mrs. Bant — his grand-nephews and niece. At the time of his death they were citizens, and capable of taking and holding real estate, but they could not inherit, because their mother still lived.

If, then, the jury believed (and there seemed to be no dispute in that regard) that Mrs. Bant was living at the death of McC., and had not been naturalized, her children did not inherit.

His property then escheated, unless there was living, at the time of his death, some relative who was then a citizen of the United States.

McCarty v. Hodges.

The plaintiff claimed to be such relative; and there were, therefore, two questions for the jury to pass upon:

1st. Was plaintiff a relative of McCarty? and,

2d. Was he a naturalized citizen?

The whole relationship, as claimed by the plaintiff, is made out from the personal knowledge of two aged witnesses from Ireland, except one link that connects the plaintiff's great-grandfather with the common ancestor, and two links that connect the decedent, Dennis McCarty of New York, with the same.

To establish those missing links evidence had been given of hearsay among the relatives, of general reputation in and of conduct in the family toward the respective parties.

Without dwelling upon the particulars of that evidence, the judge said he would content himself with stating to the jury the rules that were to govern them in determining the weight to be given to the testimony before them.

As to hearsay, the jury were aware that it is a general rule in our courts that it is not admissible in evidence. But there are exceptions to that rule. One is, on special motions addressed to the discretion of the court, or relating to matters of practice. Another is, in regard to rights of way and of commons; and another, in matters of pedigree. It was under this last exception that the testimony had been received in this case.

The object of taking all testimony is to get at the very truth of the case, and when nothing else can be obtained but hearsay, when the fact is so ancient that personal knowledge cannot be obtained, the necessity of the case compels a resort to hearsay and general reputation — hearsay from those who knew and are now dead, and reputation from those who could have no interest in fabricating evidence, and so widespread and general as to render such fabrication impracticable.

In matters of pedigree, the object is to prove how a party was acknowledged and treated by those who were interested in him or sustained towards him any relations of blood or affinity. Hearsay from them is resorted to on the ground of

the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family, and it is confined to declarations of deceased persons who were related to the person, and, therefore, interested in the succession in question — the declarations of those nearly related to the person whose pedigree is in question. The tradition must be from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they are speaking the truth and could not be mistaken — some connection from which knowledge might be presumed should be shown to have subsisted between the parties. It would, therefore, be seen that hearsay — that is, the declarations of others, even to the extent of declarations on declarations — are admissible in matters of pedigree, but only where they come from those who are in some way connected with the parties.

General reputation, however, is not confined to the family circle, but may be among those who have no connection with the parties ; but it must be so general, and of such long standing, as to preclude the idea of fabrication.

And family conduct is entitled to weight only so far as it tends to prove a recognition of relationship, from which the opinion and belief of the family may be inferred.

Measuring the testimony by these rules, it was for the jury to say whether the hearsay, general reputation and family conduct proved in this case were enough to satisfy them that the plaintiff had traced his descent from the same ancestor, from whom had descended the Dennis McCarty of New York, whose property he sought to inherit.

There was also another question in the case, one which the jury were to pass, and that involved the citizenship of the plaintiff. He was born in Ireland, and could not inherit the property of Dennis McCarty of New York, unless he had become a citizen of the United States before the death of that Dennis McCarty.

He claimed that he was naturalized, and produced a record

McCarty v. Hodges.

from a competent court which, on its face, showed that it was so. But that was not conclusive evidence. The record was open to examination, and, on such examination, a question of fact arose for the jury to pass upon and that was, whether that record was, in fact, true.

The law requires as an absolute prerequisite to naturalization, that the alien should have declared his intention to become a citizen two years prior to the final action. Did the plaintiff ever thus declare his intentions? He evidently supposed he had, but that which he supposed to be such preliminary step was not such. It was a mere report of himself, under a law which had been repealed and was, consequently, of no avail. The records of Saratoga county showed that he never declared his intentions there. He might have done that in any other county, and he knew whether he had or not. The fact that he offered no proof on the subject was pregnant with meaning, and must not be overlooked by the jury.

There were, then, two questions for the jury: Were the plaintiff and the decedent descended from the same common ancestor? Was the plaintiff a naturalized citizen? If both questions were answered in the affirmative, the verdict must be for the plaintiff; if either was answered in the negative, the verdict must be for the defendants.