ELIZABETH BURTON *v.* CECELIA BURTON *et al.*, Executors of William E. Burton, deceased.

The alien widow of a naturalized citizen of the United States, although she never resided within the United States] during the lifetime of her husband, is entitled to dower in his real estate.

THIS action was brought in the New York Common Pleas by the plaintiff, to recover her dower in certain lands lying in the city of New York, of which her husband, William E. Burton, died siezed.

It is alleged in the complaint that the plaintiff, being a free white woman, was married to Burton in England, on the 10th April, 1823, and that such marriage has never been annulled. That Burton died in the city of New York on the 10th February, 1860, siezed and in possession of certain premises lying and being in said city, described in the complaint. That said Burton left a last will and testament which has been duly proved before the surrogate of said city, wherein and whereby he divised the said premises to the defendants, Cecelia Burton and John J. Cram, in fee, which persons he appointed exectuors of his said will. That the plaintiff has duly demanded her dower in the said premises, and that the same be admeasured to her; but the defendants deny her marriage to Burton, and refuse to set off her dower. Wherefore she demands judgment for her dower, and that the same may be set off to her, and also for $1,000 damages by reason of withholding the same.

The defendants, in their answer, by way of defense, allege, first, that plaintiff was never lawfully married to said Burton; second, that the plaintiff was born in Great Britain, and has ever since resided there, and until within the year preceding has not been in the United States during the lifetime of said Burton. That she was an alien and not a citizen of the United States; that said Burton was also born in Great Britain, and came to this country and was naturalized; at the time of the alleged marriage with the plaintiff, he was an

alien and resided within the kingdom of Great Britain. After such pretended marriage he came to Pennsylvania, where he was naturalized on the 8th October, 1840. Thereafter, and in 1848, he removed to the city of New York, where he resided until his death, and acquired the property described in the complaint, on the 4th October, 1851.

The plaintiff demurred to the second defense, because the matters therein stated do not constitute a counter claim or defense to the cause of action stated in the complaint.

The demurrer was argued before Judge DALY, and it was by him overruled and judgment thereon ordered for the defendants, with costs. The plaintiff appealed from the said judgment to the General Term of said court of Common Pleas, and that court affirmed the same, with costs. From that judgment the plaintiff appeals to this court.

The plaintiff claims to be a citizen of the United States by virtue of an act of congress passed in 1855, being chapter 71 of the laws of that year, entitled, "An act to secure the right of citizenship to children of citizens of the United States born out of the limits thereof." The second section of said chapter is in these words : "And be it further enacted, that any woman *who might lawfully be naturalized under existing laws,* married, or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen."

*C. O'Conor,* for the appellant.

*H. A. Cram,* for the respondent.

MULLIN, J. An alien widow of a native born or naturalized citizen, was not entitled to dower in the lands of her husband at the common law. (Co. Litt., 31 ; 2 Bl. Com., 131 ; 4 Kent's Com., 36). This general rule has been somewhat modified in this State. By section 1, of chapter 49, of the laws of 1802, it was provided that all purchases of lands made or to be made by any alien who has come to this State and becomes an inhabitant thereof shall be deemed valid to vest the estate to them granted, and it was declared

lawful for such alien to have and hold the same, to his heirs or assigns forever, and to dispose of the same, provided that any purchase thereafter made should not exceed one thousand acres. The Supreme Court held, in *Sutliff* v. *Forgay* (1 Cowen 89), that under this statute the widows of aliens entitled by the act of 1802, and the acts extending the same, to hold real estate, are dowable. The judgment in this case was affirmed by the Court for the Correction of Errors, in 5 Cowen, 713.

The Revised Statutes embody both the foregoing sections of the act of 1802, and the construction given thereto in section 2, of title 3, article 1, chapter 1, part 2, which section is in these words:

§ 2. The widow of any alien who at the time of his death shall be entitled by law to hold any real estate, if she be an inhabitant of this State at the time of such death, shall be entitled to dower of such estate in the same manner as if such alien had been a native citizen.

It was declared by section 2 of chapter 115, of the Laws of 1845, that the wife of any alien, resident of this State, who had theretofore taken by conveyance, etc., any real estate, and who had died before the passage of said statute, and the wife of any alien resident of this State, who might thereafter take by conveyance, etc., any real estate should be entitled to dower therein, whether she was an alien or a citizen, but dower could not be claimed on lands conveyed by the husband before the passage of said act. By the third section of the same chapter it was provided, that *any woman being an alien who had theretofore married* or might thereafter marry a citizen of the United States, shall be entitled to dower on the real estate of her husband within this State, as if she was a citizen of the United States.

These are the only exceptions to the general rule, that an alien widow is not entitled to dower and none of them aid the plaintiff, unless the section last cited may be held to extend to her. The plaintiff rests her claim to a dower interest in the premises in question, on the ground that she is by virtue of the act of Congress above cited, a citizen of the

United States, and it is necessary to meet and dispose of that question in the first instance.

Is the plaintiff a citizen of the United States? To bring an alien woman within the provisions of that act, she must be first capable of being naturalized, and second, married to a citizen of the United States.

To be capable of naturalization under the laws of the United States in force at the time the testator acquires the lands in question, and at the time of his death, the applicant must be : First, a free white person. Second, she must have resided five years within the United States. Third, she must be of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. Fourth, she must renounce all titles or orders of nobility, if any she has.

It is not alleged that the plaintiff does not possess all these qualifications, except one, and that is, she has not been a resident of the United States five years, nor for any length of time prior to the death of her husband. At the death of the husband, when her right of dower became vested, if any right ever vested in her, she was not a resident of the United States, and could not at that time or at any time prior thereto have been lawfully naturalized. If a residence of five years was not a condition precedent to citizenship, residence for some length of time was most obviously contemplated. Without residence she could not be naturalized, and it is the most essential of all the requirements for naturalization, and cannot be dispensed with, unless the intention to dispense with it is most clearly manifested by the legislature.

It cannot require argument to show how vitally essential residence is to entitle a person to become a citizen of a country to which he does not owe a natural allegiance. The legislature or other body clothed with the power of conferring the right of citizenship may dispense with it ; but it requires the clearest manifestation of such an intention before it can be admitted. The permanency and prosperity of a country depend in a great degree upon the attachment of its citizens. To clothe aliens with the high prerogative of citi-

zens, who have never resided within it, who know nothing of its institutions, who have never felt any of the responsibilities which a permanent resident of a country must feel, would be an act of madness or folly of which sane men could not be guilty. A law which would thus break down all the barriers which in all ages and all countries, barbarous and civilized, have been thrown around the acquisition of the right of citizenship, would in a few years utterly destroy the government. Its institutions would be at the mercy of foreigners, whose capacity for mischief would only be limited by the extent of the interests which they might have at stake. No country can afford to throw open the right of citizenship to all who may desire to enjoy it, without imposing on them the duty of residing within it. The more carefully it is guarded, and the more difficult it is to obtain it, the more highly will it be prized; and while it is confined to those only who come within its jurisdiction, it will have some security against disorder and revolution.

It is true that citizenship is conferred by acts of congress on classes of persons who may never have been within the United States, and as to whom it is not made a condition that they shall ever become residents; but those provisions do not manifest an intention to dispense with residence in any other cases, and particularly they do not manifest such an intention in the face of a provision which makes residence indispensable. The applicant must be capable of being lawfully naturalized. This he or she cannot be while a resident and citizen of another country.

It is insisted by the plaintiff's counsel that if residence is essential to entitle an alien woman to be deemed a citizen, the residence of her husband should be deemed her residence; and as in this case Burton was a resident at the time of his death, the condition is fulfilled. It is quite obvious that if the plaintiff, on her arrival in this country, had applied to a court of competent jurisdiction to be naturalized, that the residence of her husband here for five years before his death would not have been received as a compliance with the act of congress. The applicant must himself have

resided in the country for the required term, and it cannot be satisfied by a residence for the term of any other person. If the residence of the husband can satisfy the statute, I can perceive no reason why the naturalization of the husband should not, and, indeed, why it does not *ipso facto* naturalize the wife, or why the marriage of an alien woman to a native-born citizen should not clothe her with the rights of citizenship. But it is well settled that an alien wife is not made a citizen by either. (*Sutliff* v. *Forgay, supra.*)

It was held in *Wick* v. *Wick* (10 Wend., 379), that the widow of a natural born citizen could not be endowed by reason of her alienism. The Court for the Correction of Errors went much further, and held, in *Priest* v. *Cummings* (20 Wend., 338), that even the naturalization of the widow after the death of her husband did not relate back so as to entitle her to dower in the lands of her husband, of which he was seized at the time of his death. (See also *Conolly et al.* v. *Smith*, 21 Wend. 59.)

In *Kelly* v. *Harrison* (2 Johns. Cases, 29), it was attempted to sustain the alien widow's claim of dower upon the presumption or intendment that the residence of the husband was that of the wife, but it was not sanctioned by the court. In that case it appeared that both Kelly and his wife were born in Ireland, where they were married in 1750. In 1760 K. came to New York, and resided there during the revolution and until his death, in the autumn of 1798. The widow continued to reside in Ireland even down to the bringing of the action. It was held that as they were both British subjects, she was entitled to dower in all lands owned by him prior to the Declaration of Independence, but not as to any lands acquired by him subsequent thereto. By remaining in Ireland after the separation of the colonies from the mother country she became an alien, and therefore not dowable of lands acquired while her alienage existed. RADCLIFF, J., speaking of the intendment that the residence of the husband is that of the wife, says: If the case had been *silent* as to her continued residence abroad it might have been presumed that her condition followed that of her husband; but she is

expressly stated to be a British subject.  \*  \*  \*  She had
it in her power to pursue the condition of her husband and
entitle herself to the like claim (claim for dower) in his sub
sequent estate.  Not having done this she must be deemed
to have continued a British subject, and ought from that
period be *restricted* to her rights as such.  STORY, J., in
*Shanks* v. *Dupont* (3 Peters, 248), speaking of the effect of
coverture upon the national character of a woman, a native
of South Carolina, who, during the revolution, married a
British officer and returned with him to and thereafter
resided in England, says : " The incapacities of *femes covert*
provided by the common law apply to the civil rights and are
for their protection and interest.  But they do not reach their
political rights nor prevent their acquiring or losing a national
character.  Those political rights do not stand upon the
mere doctrines of municipal law, applicable to ordinary trans-
actions, but stand upon the more general principles of the
law of nations."

If the plaintiff could be brought within the act of congress
referred to, by being capable of being naturalized, I should
be of the opinion that her marriage to Burton while he was
an alien would not . exclude her from the benefits of the
statute.  This was an enabling statute, and is to be liberally
construed, so as to give effect to the intention of congress.
At the death of her husband, she was, in the language of the
act, married to a citizen of the United States.  There would
not seem to be any sufficient reason for holding that congress
intended to extend the right of citizenship to women whose
husbands at the time of the marriage were citizens, and to
exclude those who married husbands aliens at the time of
the marriage, but who thereafter became naturalized.  It
seems to me, therefore, that it is not necessary in order to
give to the plaintiff the benefits of the act in question, that
Burton should have been a citizen at the time of her marriage
to him.  But as she was not at any time during the husband's
life a resident of the United States, I am of the opinion she
did not become entitled to be naturalized, and consequently

is not a citizen, and not being a citizen cannot be endowed of the lands in question as such.

The right to dower is not, however, given or withheld by act of congress, except so far as the right to it may be made by State laws to depend on the treaty or law-making powers vested by the Constitution of the United States in the Federal government. The act of Congress to which reference has been made does not, of itself, give to or withhold dower from alien widows, but as by the law of this State an alien widow cannot be endowed and a citizen widow can, the act of Congress, by making her a citizen, gives her a status in which the State law clothes her with the right which without the act of congress she would not be entitled to enjoy.

As the right to dower depends upon the State law, and as it is competent for the State to give the right to alien as well as native born or naturalized widows, we must go to the State statutes to ascertain whether the plaintiff, although an alien, is not entitled to dower.

I have already referred to the only provision which can be said to reach the plaintiff, and as it is very brief, I will again transcribe it. It is section 3 of chapter 115, of the Laws of 1845, and is in these words, viz.: "Any woman being an alien who has heretofore married, or who may hereafter marry a citizen of the United States, shall be entitled to dower in the real estate of her husband within this State, as if she were a citizen of the United States."

The plaintiff at the time of the passage of the act was an alien, and had theretofore married a man who then (the passage of the act) was a citizen of the United States. If this is the fair, reasonable construction of the section, the plaintiff by virtue of it is entitled to dower, she comes within the very letter as well as within the spirit of it.

Two reasons are urged why the plaintiff cannot take under the provision referred to. First, because her husband was not a citizen at the time of the marriage; and, second, because she was not at any time during the life of her husband a resident of this State.

1. Then was it necessary in order to entitle her to dower under this section, that her husband, at the time of their marriage, should have been a citizen of the United States ?

It will be seen that the phraseology of the section of the State statute and of the second section, act of congress of 1855, are in this respect identical. The construction given to the act of congress applies to the act of 1845. Both are to be liberally construed. Marriage to a person who was a citizen at the time of the passage of the act, whether citizen at the time of the marriage or not, satisfies both their language and spirit. It was the alien wives of citizens who were intended to be benefited by the statutes, and as no reason can be presumed why those only should be made citizens by the one, or endowed by the other, who had married husbands who were citizens at the time of the marriage, rather than those who should marry husbands, aliens at the marriage, but who thereafter became naturalized; and as the evident intention was to remove a disability from alien women whose husbands were citizens, the construction should be such as to give full effect to the beneficent intention of the legislature. There is nothing in the mere act of marrying a citizen that should entitle the wife to a favor which the woman who marries an alien, afterward naturalized, would not seem to be equally entitled. The fact that the husband of an alien is a citizen, " attached (as he must be) to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same," furnishes some security that the wife will not be hostile to its interest, or dangerous to its peace.

This security is none the greater by reason of the husband being a citizen at the instant of marriage rather than made such the next day, or month, or year. It must be conceded that it was competent for the legislature to restrict the right of dower to such women as should marry husbands who were citizens at the time of the marriage. But as we are to arrive at the intention of the law makers from the language of the statute, construed in reference to the evil to be remedied, or the good to be attained, and as the language of the act is

satisfied, and the end proposed best attained by the construction which I have felt constrained to give the statute, I am of the opinion that under it the plaintiff is entitled to dower.

The liberal construction given by the Supreme Court to the act of 1802 in *Sutliff* v. *Forgay* (*supra*), whereby it held that the purchase by a husband, of land in 1804, he having been naturalized in 1803, inured to the benefit of the alien wife, and entitled her to dower in the lands so purchased, should be applied to the statute of 1845. The act of 1802 under which that decision was made declared "that all purchases of land, made or to be made, by any alien who has come to this State and become an inhabitant thereof, shall be deemed valid, to vest the estate to him granted, that he might dispose of and hold the same to his heirs and assigns." By an act passed in 1808 all persons authorized by the act of 1802 to acquire real estate might also take and acquire by devise and descent. It will be seen that there is no allusion to rights of dower in either statute, yet the Supreme Court held that as the wife by the act of 1802 was capable of acquiring the title to hold the purchase of the husband inured to her benefit, so that at the time of his purchase she acquired an inchoate right of dower in the lands so purchased by him. The same court in the subsequent case of *Priest* v. *Cummings* (16 Wend., 617), and the Court for the Correction of Errors in the same case (20 Wend., 338) express doubts whether the decision in the first case was put on the true ground, yet they do not question the correctness of it, but on the contrary approve the liberal construction which the court gave to the statute whereby the widow was held entitled to dower.

2. Was residence in this State essential in order to entitle the plaintiff to dower?

The act does not in terms require it, and I do not think the legislature intended to require it. The absence of any such intention is demonstrated, it seems to me, by the other provisions of the act. The first section declares that any alien *resident* of this State who had taken a conveyance of real estate in this State, before filing in the office of the Secretary of State the deposition specified in section 15, title

1, chapter 1, of the second part of the Revised Statutes, might on filing such deposition, hold such real estate in the same manner and with the like effect as if he was a citizen of the United States. By the second section of the same act, it is provided that the wife of any alien resident of this State who had therefore taken, by conveyance, any real estate, and who had died before the passing of said act, and the wife of any alien resident who might thereafter take by conveyance, etc., should be entitled to dower therein, whether she be an alien or citizen.

By the fourth section, if any alien resident who had purchased, or who should thereafter purchase real estate and died, or should thereafter die, leaving persons who would answer the description of heirs of such persons, whether citizens or aliens, were declared capable of taking and holding as his heirs; but if any of such persons were males of full age, they should not hold such real estate unless they are citizens, or have filed the deposition required to be filed, in order to entitle them, if aliens, to take and hold real estate.

The fifth section provides that the devisee or grantee of any alien resident, may take and hold, whether a citizen or alien, but if such grantee or devisee was an alien and a male of full age, he must make and file the deposition required to be filed before he should be enabled to take and hold the premises granted or devised.

By the sixth section a resident alien was authorized to grant or devise real estate to a resident alien, if such grantee, etc., had failed, the deposition required by law, on condition that the resident male alien of full age should himself file a deposition. It is unnecessary to refer to all the provisions of the statute. Suffice it to say, that in eight out of the first nine sections, where residence by the grantee or devisee is considered essential by the legislature, as a condition precedent to the right to take and hold land, it is so declared. But the third section, and in the subsequent sections, where females are permitted to take either as grantees or devisees, or as dowagers, residence is not made a condition, it being made necessary only as to males of full age. By making

47

residence a condition as to one class of persons, and omitting to require it as to another class, conclusive evidence is furnished that the legislature did not intend to require it of such other.

It is urged by the defendants' counsel that to give the widow dower in the lands of her husband would be a violation of the Constitution of the United States, which declares that no person shall be deprived of life, liberty, or property without due process of law. I do not perceive that the difficulty suggested by the counsel can arise. If I am right in holding that the widow takes not under the act of congress, but under the State law of 1845, then the right to dower attached the instant the husband purchased the land, precisely as it would have done had she been at that time a citizen of the United States. Unless, therefore, all laws giving dower to alien widows in the lands of husbands are unconstitutional, there is no reason for holding the act of 1845 to be so.

I am of opinion that the judgment of the Common Pleas should be reversed, and judgment ordered for the plaintiff, overruling the demurrer, with costs.

Ingraham, J. 1st The plaintiff was not a citizen when she was married.

2d. The defendant was not a citizen when he came to this country.

3d. The plaintiff never came to this country during the life of the wife.

4th. The plaintiff could not have been naturalized when the husband was.

5th. At no time during the life of the husband could the plaintiff have been made a citizen.

6th. The act of 1845 does not confer any rights of citizenship on the plaintiff.

7th. The act of 1855 does not apply to her because she could not have been made a citizen at any time during the life of the husband.

8th. The right of the husband to property purchased before the wife became a citizen, cannot be impaired by any subsequent legislation of Congress.

9th. Any such act does not act retrospectively in the words " can be construed by prospective action."

Judgment should be affirmed.

WRIGHT, J. The action was for the admeasurement of dower on lands whereof the defendants' testator died seized. There was a demurrer to the second defense set up in the answer; and assuming the truth of the allegations of the complaint which are not put in issue by the second defense, and also assuming the truth of the allegations of the second defense, the case is this : William E. Burton, the decedent, and the plaintiff, were both natives of England, and by birth British subjects. They were married on the 10th April, 1823, in England, where they both then resided. Burton became thereafter a resident of Pennsylvania, and became a citizen of the United States by naturalization on the 8th October, 1840. He removed to this State in 1848, and thenceforth resided therein until the 10th February, 1860, the day of his death. He acquired the property in question on the 4th October 1851. The plaintiff is a free white woman. She always resided in England until a year prior to the action, and never was in the United States during Burton's lifetime.

The only question is, is the plaintiff entitled to dower in the lands mentioned in the pleadings ? At common law an alien woman was not entitled to be endowed of the land of her husband, whether he was a citizen or not. (Jenk. Cent., p. 3, case 2 ; 4 Kent Com., 36 ; *Kelly* v. *Harrison*, 2 Johns. Cases, 29.) But the rule has been somewhat changed in this State by statute. (Laws of 1845, chap. 115, §§ 2, 3.) The change wrought, however, I think will not embrace the case of the plaintiff if she be an alien. The statute provides that " any woman, being an alien, who has heretofore married, or who may hereafter marry a citizen of the United States shall be entitled to dower on the real estate of her

husband, within this State, as if she was a citizen of the United States." (§ 3.)   The woman must before or after the passage of the act in 1845, have married a citizen of the United States.   At the time of the plaintiff's marriage to Burton, in 1823, he was an alien.   The evident intention was to provide for cases of citizens who had married alien wives either before or after the passage of the law; and whether the case of the widow of an alien naturalized after their marriage, was omitted by accident or design, it is not within the provisions of the statute.   Until the legislature interfere, such case must be governed by the common law. (*Greer* v. *Sankston*, 26 How. Pr., 473.)

But was the plaintiff an alien or a citizen ?   If the latter, she had a right to be endowed of the estate of which her husband was seized during the coverture, except so much thereof as he had aliened previously to her personal disability to take dower by reason of her alienism, being removed.   It is claimed that the act of Congress passed February 10th, 1855 (10 Stat. at Large, chap. 71), made her a citizen from and after its passage ; and I confess that I am of the opinion that such is its true construction.   There seems no room for a different interpretation.   That part of the act affecting the case, and which is in a distinct section, is in these words : "Any woman that might lawfully be naturalized under the existing laws, married, or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen." (§ 2.)   The provision is nearly a transcript of the 16th section of the act of 7 and 8 Victoria, chap. 66, 1844, which declared "that any woman married, or who shall be married, to a natural born subject or person naturalized, shall be deemed and taken to be herself naturalized, and have all the rights and privileges of a natural born subject."   Both statutes describe a condition or *status* of the "woman" existing at the moment they were passed.   The words refer merely to the marriage condition.   In *Regina* v. *Manning* (2 Carr. and Kir., 886), in speaking of the British act, POLLOCK, Ch. B. said : " The expression of the statute is 'any woman married,' that is 'already married,' and in that

case a Swiss woman who married an Englishman was denied her jury *de mediatate linguæ* on the ground that this was the privilege of an alien, and the prisoner having by the act been made a British subject, with all the incidents that attached to that status, she was not entitled to it." The act of congress declares that "any woman married (that is, married at the passage of the act) to a citizen of the United States, shall be deemed and taken to be a citizen." The effect of the act was to grant the privileges of citizenship to women married to citizens of the United States without regard to the fact whether the ceremony of marriage had preceded the ceremony of naturalization in cases where the husband was a naturalized citizen, provided the woman herself "might lawfully be naturalized under the then existing laws." The existing naturalization act required no more than that the person claiming its benefits should be a "free white person" and not an alien enemy. (Act of April 14, 1802, 2 Stat. at Large, 153). Such a person "might lawfully be naturalized." The court below held that the intent and object of the act of 1855 was to grant the privilege of citizenship to an alien woman resident or not married to a person who, at the time of the marriage, was a citizen of the United States, or at farthest to an alien woman residing in the United States, though married to an alien abroad and who came here with him, or followed him here, and in one or the other of these ways identified herself with the country of his adoption. This conclusion was reached, not from looking at the act itself, but by traveling out of it. The court, after learnedly considering previous incomplete legislation of congress on the subject of the citizenship of children of American citizens born in a foreign country, jump at the conclusion that the legislative intent was to make citizens of those alien wives whose husbands were citizens at the time of the marriage, and not at the time of the passage of the act, or at most those wives of persons becoming citizens by naturalization, and who resided within the United States. But, manifestly, where the legislature declares, in clear, precise and unambiguous terms that "a woman married to a citizen of the United

States (whether native born or naturalized) shall be deemed and taken to be a citizen," courts have no right by judicial construction to overrule the plain and explicit expression of the legislative will. In *Regina* v. *Manning* (*supra*), when the case was in the Exchequer Chamber it was distinctly held that those naturalization acts are to be construed literally when they are plainly expressed, and are not to be restrained by exceptions inferred or implied by the judges. It is not for courts to say that a distinct subsequent enactment of this character is unwise or impolitic, and under color of interpreting the legislative will substitute something that they deem wiser than what is written in the statute book. But if this were properly to be tolerated, for myself I could conceive of no ground for excluding from the benefit of the act of 1855, the women, who at the passage of the act were the wives of naturalized citizens, merely because the ceremony of marriage had preceded the ceremony of naturalization.

By the correct interpretation of the act of 1855, then, I think the plaintiff falls within that class of persons to whom the act granted the privileges of citizenship. It is true that from some cause she never actually resided in this country. But the act does not require that the woman claiming its benefits shall have resided within the United States, and, if it did, the residence of the plaintiff, was, by construction of law, the same as that of her husband. (Story's Conflict of Laws, § 46; *Warrender* v. *Warrender*, 9 Bligh., 103, 104.) It is said, furthermore, that she did not, by residence, or in any other way, assume the allegiance of the United States, or give her assent to the citizenship conferred by the act. This, however, was not necessary to entitle her to claim its benefits. The privileges of citizenship have often been granted to whole classes of persons, without requiring any act of assent on their part, or subjecting them to the duties of allegiance, or exposing them to the penal consequences of treason in case they should commit acts of hostility against the government making the grant. The act of 7 and 8 Victoria, before alluded to, is a notable example. (1 Chitty's Black-

stone, 366, note 1; *Ludlum* v. *Ludlum*, 26 N. Y., 376-378; *Fitch* v. *Weiler*, 6 Harr., 63, 64.)

The point was raised and pressed with much earnestness by the defendants' counsel, that the plaintiff was not entitled to claim dower on the land described in the complaint, it having been purchased by Burton in 1851, and an absolute unincumbered title having been vested in him prior to the passage of the act making his wife a citizen. The objection in substance is, that a naturalized wife is not entitled to claim dower in lands of her husband, acquired previously to her naturalization. The ground of the objection is a want of power in congress to pass any law, the effect of which is to take away or impair vested rights of property in the husband. Burton, it is said, was the absolute owner of the land in question before his wife was naturalized, and an act of congress by which property is taken from one and transferred to another, or by which the property of one is taken or destroyed without compensation, even though it is not transferred to another, is within the condemnation of that provision of the federal Constitution, which declares that "no person shall be deprived of life, liberty or property, without due process of law" (amendments to U. S. Const., Art. 5), and that to create a contingent right of dower, and attach it to land of which he is the absolute owner, so as to diminish its vendible value and limit his power of disposition in respect to it, is a taking of his property in a constitutional sense. The difficulty with this argument is, that the act of congress naturalizing the wife, of itself gives nothing to the wife or takes anything from the husband in the nature of property; it merely removes a personal disability of the wife to take dower by reason of her alienism; and in this Burton had no vested right. A right in the wife to take dower was, at all times, a fundamental feature in the law and civilization of the people amongst whom he and the plaintiff were born and married.

He did not depart from the sovereignty of that civilization when he removed to this country and became an inhabitant thereof. (1 Greenl. Cruise, title 6, chap. 1, §§ 1, 2, 3, 4,

5, 6; Park on Dower, p. 2 and notes.) Personal disabilities are imposed or removed by the State as a matter of State policy; and no third person has either a legal interest or a right of the nature of property in their existence or continuance. The effect of their absence or presence on the individual interests of third persons is merely incidental. The creation or preservation of such interests is never an object or a duty of the legislature in dealing with such disabilities. It is purely a matter of public policy. A married woman may obtain naturalization without the consent of her husband (*Priest* v. *Cumming*, 16 Wend., 626; S. C. on Error, 20 id., 345); and in virtue of her naturalization she at once becomes entitled by act and operation of law to dower on all lands theretofore acquired by him, and of which he was seized during the coverture, except such as he had previously aliened. In other words, as against the husband, the act of naturalization perfects her right in respect to his previously acquired lands. " When an alien woman," says CRUISE, " is created a *denizen*, she becomes entitled to dower out of all the lands whereof her husband was seized at the time when she was created a denizen; but not out of any lands whereof he was seized before, and which he had aliened." (1 Greenl. Cruise, title 6, chap 1, § 30.) So if she were naturalized. (*Priest* v. *Cummings*, 16 Wend., 617.)

The judgment of the Common Pleas should be reversed, and judgment given for the plaintiff on the demurrer to the second defense, with directions that the court below proceed to try the question of fact presented by the first defense.

All concur with WRIGHT except DAVIS and HOGEBOOM.

Judgment reversed.