In the Matter of the Claim of NICOLENE JOHANSEN, Respondent, against STATEN ISLAND SHIPBUILDING COMPANY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

(Argued October 5, 1936; decided November 24, 1936.)

*James Gillin* and *Henry W. Baird* for appellant.

*John J. Bennett, Jr., Attorney-General (Leon Freedman of counsel), for State Industrial Board, respondent.*

HUBBS, J. Andreas Johansen was accidentally killed on November 4, 1926, while in the course of his employment. He left him surviving his widow, the claimant, whom he married in Norway in 1904, and four children, three of whom were under the age of eighteen years. The claimant has never been in this country.

Claim was made under the Workmen's Compensation Law (Cons. Laws, ch. 67) for death benefits, and on

February 3, 1930, the Industrial Board made an award to the widow and three minor children, which award was commuted and paid under section 17 of that law, upon the theory that the widow and children were aliens.

About January 2, 1931, the Industrial Board reopened this case and made a new award to the claimant at the full rate on the ground that she and the children were citizens, the carrier being given credit for all moneys paid. The Appellate Division, by a divided court, affirmed the award.

The citizenship and prior residence within the United States for the required period for naturalization of Andreas Johansen are established by a decree of the United States District Court for the Eastern District of New York, entered November 7, 1900, admitting him to citizenship. That decree is conclusive and cannot be attacked collaterally. (*McCarthy* v. *Marsh*, 5 N. Y. 263; *Spratt* v. *Spratt*, 4 Pet. [U. S.] 393, 406; *Johannessen* v. *United States*, 225 U. S. 227, 236.) The claimant Nicolene Johansen acquired citizenship through her marriage to Andreas Johansen in 1904, as section 1994 of the Revised Statutes of 1874 then in force so provided.

The Board has found as a fact that Andreas Johansen never lost his citizenship by returning to Norway, the country of his birth, after his naturalization.

Appellant contends that the claimant Nicolene Johansen lost her citizenship by her continuous residence in Norway from the time of her marriage to the date of her husband's death, and that if she had not then lost her citizenship, she did so through continued residence in Norway for more than two years from the date of his death to the date of the first award. In support of this contention we are referred to the provisions of the treaty signed May 26, 1869, and proclaimed January 12, 1872 (17 U. S. Stat. 809), which reads:

" III. Relating to the third article of the convention. It is further agreed that if a Swede or Norwegian, who has become a naturalized citizen of the United States, renews his residence in Sweden or Norway without the intent to return to America, he shall be held by the government of the United States to have renounced his American citizenship.

" The intent not to return to America may be held to exist when the person so naturalized resides more than two years in Sweden or Norway."

We are also referred to the act of March 2, 1907, chapter 2534, section 2; 34 U. S. Stat. p. 1228, now section 17, title 8, U. S. Code, which provides: " When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years. Such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe."

Prior to that enactment, which we will refer to as the act affecting non-resident naturalized citizens, there was no presumption of loss of citizenship through residence abroad declared by act of Congress, though the treaty did raise the presumption. ( *United States ex rel. Anderson* v. *Howe,* 231 Fed. Rep. 546.)

It was held, prior to that enactment, under statutes making an alien women a citizen through marriage to a citizen, that continued residence abroad did not affect the status of a woman thus acquiring citizenship. ( *Burton* v. *Burton,* [1864] 1 Keyes, 359; *Renner* v. *Muller,* [1879] 44 N. Y. Super. Ct. [12 Jones & S.] 535.) In so deciding, the courts did not depart from established principles. They merely gave expression to the fact that under the law as it then existed all naturalized citizens were entitled

to retain their citizenship though resident abroad and held that a contrary rule was not applicable to women naturalized through marriage to a citizen.

To the above quoted act affecting non-resident naturalized citizens, since it does not except women whose citizenship depends upon their marriage to a citizen, should be given the interpretation that it is of general application and affects such women as well as other naturalized citizens, unless there is some controlling act which excludes them from its application. Congress, by section 4 of the act of March 2, 1907 (Ch. 2534, 34 U. S. Stat. p. 1229 [see U. S. Code, tit. 8, § 10]), provided that " any foreign woman who acquires American citizenship by marriage to an American shall be assumed to retain the same after the termination of the marital relation if she continue to reside in the United States, unless she makes formal renunciation thereof before a court having jurisdiction to naturalize aliens, or if she resides abroad she may retain her citizenship by registering as such before a United States consul within one year after the termination of such marital relation."

That act, to which we will refer as the act with respect to retention of citizenship by a woman naturalized by marriage after termination of the marital relation, was repealed by chapter 411, section 6, 42 U. S. Stat. p. 1022, enacted September 22, 1922, but the repealing statute provided that it should not terminate citizenship acquired or retained under the act repealed, nor restore citizenship lost thereunder. Thus, the claimant Nicolene Johansen, since she acquired citizenship prior to 1922, must be held entitled to any benefits afforded by the act last quoted, if applicable in view of her non-residence in the United States. If that act be given the interpretation that it applies to a woman who had resided for two years in her native land or five years in any other foreign state before termination of the marital relation, there is a direct conflict between that act and the act affecting

non-resident naturalized citizens. If, on the other hand, it be given the interpretation that it applies only to such women, deemed citizens by reason of marriage to a citizen, as have not forfeited their right to citizenship prior to termination of the marital status by residence abroad within the provisions of the act affecting non-resident naturalized citizens, then effect may be given to both statutes without granting to an alien woman acquiring citizenship through marriage who continues to reside abroad rights which are not given to a person who comes to the United States, complies with the requirements for naturalization and then takes up residence in a foreign country. We believe that it was the intent of Congress that only a woman naturalized by marriage who has not lost her citizenship by reason of the statute affecting non-resident naturalized citizens is to be assumed to have retained her citizenship after termination of the marital relation within the meaning of the act with respect to such a woman then resident abroad.

We are not unmindful of the fact that a contrary determination was reached by the Appellate Division in *Matter of Gorman* v. *National Aniline & Chemical Co.* (214 App. Div. 746).

The claimant not only resided for two years after the death of her husband in Norway, the country of her birth, but as well for five years prior to her husband's death she resided there. In order to establish her right to an award as a citizen it became incumbent upon her to prove her status as a citizen and in so doing to overcome the presumption prescribed in the act affecting non-resident naturalized citizens. Since the record is barren of proof of compliance with the provisions of that act by which the presumption to alienage may be overcome, and the burden of proof rested on the claimant, we may assume non-compliance therewith.

But it is contended that claimant was not a naturalized citizen. Such contention is based upon *Matter of Hansen* v. *Corson Const. Corp.* (233 App. Div. 326, 329), where the

court said: " But an examination of the provisions of the treaty discloses that it has no application here because it relates only to naturalized citizens of the United States. The widow, in the present case, is not a naturalized citizen. Her status as a citizen was created by her marriage to a citizen, not by her naturalization."

We cannot subscribe to such a conclusion as applied to the facts of this case. There are two classes of citizens, native born citizens and naturalized citizens. Claimant was not born a citizen. She was, therefore, a naturalized citizen. (*Leonard* v. *Grant*, 5 Fed. Rep. 11; *United States* v. *Kellar*, 13 Fed. Rep. 82; U. S. Const., 14th Amendt. § 1.) Her naturalization occurred by virtue of the act which provided at the time of her marriage that she acquired citizenship through the naturalization of her husband.

Having reached the conclusion that the claimant Nicolene Johansen was an alien at the date of her husband's death, we hold that the commutation of the award to her was proper.

As to the three children in behalf of whom claim has been made, a different conclusion must be reached. It is provided by section 6, title 8, U. S. Code, as follows: " Section 6. Citizens; children of citizens born outside of United States. All children born out of the limits and jurisdiction of the United States, whose fathers may be at the time of their birth citizens of the United States, are declared to be citizens of the United States; but the right of citizenship shall not descend to children whose fathers never resided in the United States. All such children who continue to reside outside the United States shall, in order to receive the protection of this Government, be required upon reaching the age of eighteen years to record at an American consulate their intention to become residents and remain citizens of the United States and shall be further required to take the oath of allegiance to the United States upon attaining their majority. Duplicates of any evidence, registration, or

other acts required by this section shall be filed with the Department of State for record. (R. S. § 1993; Mar. 2, 1907, c. 2534, §§ 6, 7, 34 Stat. 1229.)"

These children, born in 1910, 1916 and 1919, were not naturalized citizens, but citizens by birth, though born without the United States. (U. S. Code, tit. 8, §§ 6, 7.) They had not, when their father died, attained the age of eighteen years when such children are required to take action, under section 6, to preserve their right to protection by the United States government. Since the fact of survival, not dependency nor residence within the United States, determines the right of a wife or children under the age of eighteen years to compensation, known as a death benefit, under section 16 of the Workmen's Compensation Law if they are then citizens, these children became, upon the death of their father, entitled to a full award, not commuted under section 17 of the Workmen's Compensation Law, as section 17 applies only to aliens.

The order of the Appellate Division and the award of the State Industrial Board should be reversed and the matter remitted to the State Industrial Board for an award affirming the original award and the commutation as to the widow and reversing so much of the original award as provides for commutation thereof under section 17 of the Workmen's Compensation Law as to the children, with costs in this court and in the Appellate Division against the State Industrial Board.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.