**ZIMMER et al. v. ACHESON, Secretary of State.**

No. 4259.

United States Court of Appeals
Tenth Circuit.

Aug. 29, 1951.

Rehearing Denied Sept. 27, 1951.

A. B. Mitchell, Topeka, Kan., for appellants.

Lester Luther, U. S. Atty., Eugene W. Davis, Asst. U. S. Atty., and Malcolm Miller, Asst. U. S. Atty., all of Topeka, Kan., for appellee.

Before PHILLIPS, Chief Judge, MURRAH, Circuit Judge, and RICE, District Judge.

PHILLIPS, Chief Judge.

This is a declaratory judgment action brought by Harry Ward Zimmer and Ilona Zimmer, seeking an adjudication that each of them is a citizen of the United States.

Harry Ward Zimmer was born in Coburg, Bavaria, August 9, 1905. He married Ilse Erdmann June 15, 1939. Ilona, the issue of such marriage, was born in Germany on July 22, 1940. Ilse Erdmann was a citizen of Germany. She never became a citizen of the United States. She died at Hof, Bavaria, January 13, 1946.

Werner Herman Zimmer was born in Gera, Thuringia, in 1867. He came to the

United States sometime after January 1, 1890. Thereafter, he was united in marriage to Nellie M. Lang, who was born in Wheeling, West Virginia, on July 18, 1867. Harry Ward Zimmer is one of the issue of that marriage. Werner Herman Zimmer was naturalized in the Circuit Court of Ohio County, West Virginia, on October 30, 1896. In 1901 he returned to Germany to visit his father, who was ill. He accepted employment in Germany as the editor of a publication specializing in news relating to the ceramic industry. Later, he was employed in Germany by the Haviland China Company. He resided in Germany continuously from the time of his return in 1901 until the time of his death in 1933. Nellie Lang Zimmer resided with her husband in Germany until his death, and thereafter she continued to reside in Germany until her death in 1947.

In 1908, Werner Herman Zimmer and Nellie Lang Zimmer, accompanied by Harry Ward Zimmer, came to the United States to visit relatives. Werner Herman Zimmer remained in the United States for a short period only, but Nellie Lang Zimmer and Harry Ward Zimmer remained several months, visiting relatives at Wheeling, West Virginia. They returned to Germany early in 1909. From the time of his return in 1909 until the year 1925 Harry Ward Zimmer resided continuously in Germany, where he grew up and received his education. In the summer of 1925 he visited relatives in the United States. He returned to Germany in the fall of that year and continued his studies at the University of Wurzburg in Bavaria, from which he was later graduated. He resided in Germany continuously from the time of his return in the fall of 1925 until 1933. In November, 1933, Harry Ward Zimmer and Nellie Lang Zimmer came to the United States and visited relatives in West Virginia and Kansas. They returned to Germany in January, 1934. In the fall of 1934, Harry Ward Zimmer again came to the United States and visited relatives at Lawrence, Kansas, and Wheeling, West Virginia. He unsuccessfully sought employment in the United States. He again

came to the United States in September, 1938, and returned to Germany in November, 1938.

In either February or March, 1940, Harry Ward Zimmer received notice to report to a German draft board. He reported and was examined and thereafter, on June 11, 1940, began active service in the German army. During the interim between the receipt of the notice to report and the time he reported to the draft board, Harry Ward Zimmer made no effort to secure evidence of his American citizenship. Explanatory of that failure, he testified, "I didn't do anything because I expected that would be cleared up when I reported at the board. *. * * I expected when I going there and tell that would be suficient." But he also testified that he considered himself something of a dual citizen, and that the German draft board had a right to consider him as a German citizen. At the time he was examined by the German draft board he advised the board he was an American citizen. They told him he was a German citizen and directed him to "stay in line." He made no report of the matter to the American consul, although the United States was not then at war with Germany, and he made no effort to prevent his induction. He testified that he was fearful harm would come to him or his wife; that they talked it over and decided that the war would not last very long and that perhaps the best thing to do would be to enter the army. He thus explained his failure to appeal to higher German authority or to the American consul, or to take any affirmative action to prevent his induction.

The public law of Germany in 1940 required all soldiers to take an oath upon entry into the service, reading as follows: "In the name of God I swear this sacred oath: that I will unconditionally obey Adolf Hitler, the Fuhrer of the German Reich and people, and the Commander-in-Chief of the Wehrmacht, and will be willing as a brave soldier to sacrifice my life at any time for this oath."

Harry Ward Zimmer testified that when the oath was administered he did not raise

his hand, nor repeat the oath as the other inductees did. He received two promotions while in the German army.

On or about April 4, 1947, Harry Ward Zimmer made an application for a passport for himself and Ilona as citizens or nationals of the United States. The application was denied on the ground that Harry Ward Zimmer had expatriated himself by taking the oath of allegiance to Germany. Harry Ward Zimmer came to the United States on a temporary visa for the purpose of prosecuting the instant action.

The trial court refused to believe the evidence of Harry Ward Zimmer that he did not voluntarily take the oath of allegiance set forth above and concluded that if he had not theretofore lost his American citizenship, he expatriated himself when he took such oath.

Ilona claims citizenship solely through her father. The court further concluded that since Harry Ward Zimmer was not a citizen of the United States on the date of the birth of Ilona, she did not derive American citizenship through her father.

Harry Ward Zimmer and Ilona have appealed from a judgment adjudicating that neither of them is a citizen of the United States.

■ There are only two classes of citizens of the United States, native-born citizens and naturalized citizens;[1] and a citizen who did not acquire that status by birth in the United States is a naturalized citizen.[2]

Revised Statutes § 1993, in force at the time of the birth of Harry Ward Zimmer, provided: "All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were, or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

If Werner Herman Zimmer, by virtue of his naturalization on October 30, 1896, was a citizen of the United States on August 9, 1905, the date of the birth of Harry Ward Zimmer, then the latter, at the time of his birth, became a citizen of the United States by virtue of the foregoing statute, but his status as a citizen was that of a naturalized citizen and not a native-born citizen.

Section 2 of the Act of March 2, 1907, 34 Stat. 1228, 2 F.C.A. Title 8, § 17,[3] in part, reads: "When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: *Provided, however,* That such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe: * * *."

■ Werner Herman Zimmer resided in Germany continuously from 1901 until his death in 1933. There can be no doubt on this record that Harry Ward Zimmer was a resident of Germany throughout his minority and that he voluntarily resided in Germany from the time he arrived at his majority until his induction into the German army. The record is devoid of any evidence that Harry Ward Zimmer took any steps to overcome the presumption that he had ceased to be a citizen of the United States, which arose under the provisions of the Act of March 2, 1907, by virtue of his

---

1. Elk v. Wilkins, 112 U.S. 94, 101, 102, 5 S.Ct. 41, 28 L.Ed. 643; United States v. Wong Kim Ark, 169 U.S. 649, 702, 18 S. Ct. 456, 42 L.Ed. 890; Johansen v. Staten Island Shipbuilding Co., 272 N.Y. 140, 5 N.E.2d 68, 70; Schaufus v. Attorney General of United States, D.C.Md., 45 F. Supp. 61, 67.

2. United States v. Wong Kim Ark, 169 U. S. 649, 702–703, 18 S.Ct. 456, 42 L.Ed. 890; Johansen v. Staten Island Shipbuilding Co., 272 N.Y. 140, 5 N.E.2d 68, 70; United States v. Kellar, C.C.Ill., 13 F. 82, 85; Schaufus v. Attorney General of United States, D.C.Md., 45 F.Supp. 61, 67.

3. See 8 U.S.C.A. § 804.

continuous residence in Germany during the period from 1926 until 1931. We do not think the belated effort of Harry Ward Zimmer to return to the United States in 1947 is sufficient to overcome the presumption that he had ceased to be a citizen of the United States in 1931 or prior thereto.[4]

 Since the trial judge has the opportunity of observing a witness while testifying and his demeanor on the witness stand, ordinarily, the question of the credibility of a witness is peculiarly one for determination by the trial court.[5]

A trial court may refuse to accept the testimony of a witness, even though it is not directly contradicted by other evidence, where the witness is interested in the outcome of the case; where his demeanor while testifying gives rise to doubts of his sincerity; where his evidence is inherently improbable; or where omissions and inconsistencies in his testimony engender doubts as to his veracity.[6]

In Quock Ting v. United States, 140 U. S. 417, 420, 11 S.Ct. 733, 734, 35 L.Ed. 501 the court said: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He. may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the

weight which should be given to his statements, although there be no adverse verbal testimony adduced."

In view of Harry Ward Zimmer's continuous residence in Germany from the time of his birth until his induction into the German army, the presumption adverted to above that he had ceased to be an American citizen, his failure to take steps to prevent his induction into the German army on the ground that he was an American citizen, and the many omissions, inconsistencies and inherent improbabilities in his testimony, we cannot say the findings of the trial court are clearly erroneous. Accordingly the judgment is affirmed.

---

4. Schaufus v. Attorney General of United States, D.C.Md., 45 F.Supp. 61, 67.

5. Woey Ho v. United States, 9 Cir., 109 F. 888, 890; Snapp Hotel & Realty Co. v. Elbert, 8 Cir., 108 F.2d 661, 664; National Mutual Casualty Co. v. Eisenhower, 10 Cir., 116 F.2d 891, 895.

6. Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 851, 35 L.Ed. 501; Emanuel v. Kansas City Title & Trust Co., 8 Cir., 127 F.2d 175, 180.